**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**JEREMY SHANE SKAGGS**                                                    **PLAINTIFF**

**v.**                            **Case No. 4:22-cv-01029-LPR**

**WHITNEY HOWELL AND
BENJAMIN HOWELL**                                            **DEFENDANTS**

<u>**ORDER**</u>

    This Order DENIES Jeremy Shane Skaggs's Motion to Remand.[1]  As a threshold matter, the Court notes that Mr. Skaggs's Motion violates Local Rule 7.2(a).  It is not accompanied by a brief.  For that reason, the Motion is denied to the extent it raises any non-jurisdictional issues.  Thankfully for Mr. Skaggs, the main issue raised by the Motion is a jurisdictional one.  And because of the important Article III interests in limiting federal courts to deciding only cases and controversies, the Court has an obligation to examine the jurisdictional issue irrespective of whether that issue was properly raised.[2]  So on we go.

## I.    BACKGROUND FACTS

### A.    *The Complaint*

    In his Complaint, Mr. Skaggs alleges that he and the Defendants (Whitney and Benjamin Howell[3]) had a contract whereby (1) Mr. Skaggs would make improvements to the Howell home, (2) the Howells would sell their home, and (3) Mr. Skaggs would receive any money in excess of $40,000 that came from the sale of the home.[4]   According to Mr. Skaggs, he advanced

---

[1] Mot. to Remand (Doc. 18).

[2] *See Huggins v. FedEx Ground Package Sys., Inc.*, 566 F.3d 771, 773 (8th Cir. 2009) (Courts are "obligated to consider *sua sponte* our jurisdiction to entertain a case . . . .").

[3] Although the Complaint named additional Defendants, all other Defendants have been dismissed from the case.  *See* Order Dismissing Wells Fargo Bank (Doc. 8); Order Dismissing ProLand (Doc. 11).  Only Whitney and Benjamin Howell remain as Defendants.

[4] Compl. (Doc. 2) at 1–2.

approximately $35,000 for labor and material costs.[5]  Mr. Skaggs alleges that the Howells sold the home intending to cut Mr. Skaggs out of the deal—i.e., not pay him anything.[6]  And Mr. Skaggs alleges that part of the scheme to breach the contract included the Howells trumping up allegations that Mr. Skaggs raped Mrs. Howell.[7]  Implying that the contractual agreement was reached sometime in 2015, Mr. Skaggs alleges that he began work on the house in September of 2015 and stopped work on the house in May of 2018.[8]

Both Mr. Skaggs and Mr. Howell are military men.[9]  The Complaint alleges that the "Defendants contacted the Plaintiff's Commanding Officer, who then forwarded the . . . Defendants' false Complaint to the police department."[10]  Mrs. Howell then "initiated charges against the Plaintiff" as part of the purported scheme to get out of paying Mr. Skaggs his due under the aforementioned contract.[11]  A police investigation ensued, but the Prosecuting Attorney ultimately declined to prosecute the case.[12]

Asserting lost reputation and a forced job-transfer as injuries, Mr. Skaggs alleges that the "Defendants, acting in concert, . . . defamed the Plaintiff, committed an abuse of process, and placed Plaintiff in a false light."[13]  The Complaint more specifically asserts that the "Defendants knew" that "Plaintiff did not rape" Mrs. Howell, but "they [nevertheless] falsely contacted

---

[5] *Id.* at 2.

[6] *Id.* at 5.

[7] *Id.* at 2.

[8] *Id.* at 4.

[9] Mr. Howell is still in the military.  *See* Ex. 1 (Second Benjamin Howell Suppl. Aff.) to Defs.' Second Suppl. Resp. to Mot. to Remand (Doc. 40-1) at 1.  It is unknown if Mr. Skaggs is still in the military, but he was at the time of the events in the Complaint.  *Id.* at 1–2.

[10] Compl. (Doc. 2) at 2.

[11] *Id.*

[12] *Id.*

[13] *Id.* at 3.

Plaintiff's commanding officer and accused Plaintiff of rape" in an attempt "to discourage the Plaintiff from pursuing [the Defendants] for the money [they] owed the Plaintiff."[14]

A fair reading of this Complaint suggests that Mr. Skaggs is attempting to bring the following claims: (1) breach-of-contract claims against both Mr. and Mrs. Howell for failure to pay Mr. Skaggs his portion of the sale proceeds;[15] (2) unjust-enrichment claims against both Mr. and Mrs. Howell for accepting the benefit of Mr. Skaggs's labor and materials without paying for it;[16] (3) claims for a labor and materials lien against both Mr. and Mrs. Howell for the same conduct described in category 2 above;[17] (4) defamation claims against both Mr. and Mrs. Howell for reporting the alleged rape to Mr. Howell's superior officer and for initiating charges concerning the alleged rape with the police;[18] (5) abuse-of-process claims against both Mr. and Mrs. Howell for the same conduct described in category 4 above;[19] and (6) false-light-invasion-of-privacy claims against both Mr. and Mrs. Howell for the same conduct described in category 4 above.[20]

There is, however, a catch.  Mr. Skaggs has now expressly disclaimed—clearly and repeatedly—any defamation claim against Mr. Howell for Mr. Howell's report of the alleged rape to Mr. Howell's commanding officer.[21]  But Mr. Skaggs believes his Complaint is capacious enough to include a defamation claim against Mr. Howell for speaking to the police (as opposed to his commanding officer) if the evidence ends up suggesting that Mr. Howell spoke to the police

---

[14] *Id.* at 4.

[15] *Id.* at 3.

[16] *Id.*

[17] *Id.* at 1, 4–6.

[18] *Id.* at 3–4.

[19] *Id.*

[20] *Id.*

[21] *See generally* Aug.10, 2023 Hr'g Tr. (Rough) at 10:00–10:12.

about the alleged rape.[22]  And Mr. Skaggs has not disclaimed the abuse-of-process or false-light-invasion-of-privacy claims against Mr. Howell for the report to Mr. Howell's commanding officer.[23]

**B.**      ***Mr. Howell's Affirmative Defense***

This case began in state court.  It was removed under 28 U.S.C. § 1442a.[24]  That statute provides as follows:

> A civil or criminal prosecution in a court of a State of the United States against a member of the armed forces of the United States on account of an act done under color of his office or status, or in respect to which he claims any right, title, or authority under a law of the United States respecting the armed forces thereof, or under the law of war, may at any time before trial or final hearing be removed for trial into the district court of the United States . . . .[25]

Absent this statute, there would not be federal jurisdiction in this case.  Mr. Skaggs's claims sound solely in state law, and there is no suggestion that the parties are diverse.  Under the well-pleaded complaint rule, this would typically end the matter and require the Court to remand the case back to the state court.[26]  But § 1442a operates as an exception to the well-pleaded complaint rule.[27]

In order to proceed with the case here in federal court, Mr. Howell must meet § 1442a's requirements.  When addressing a jurisdictional issue like this one, the Court need not limit itself to the allegations in the Complaint.[28]  Rather, the Court may rely on evidence (such as declarations,

---

[22] *Id.* at 10:10–10:12.

[23] *Id.* at 10:03–10:04.

[24] Notice of Removal (Doc. 1).

[25] 28 U.S.C. § 1442a.

[26] *See Caterpillar Inc. v. Williams*, 482 U.S. 386. 392 (1987) ("[F]ederal jurisdiction exits only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.").

[27] *Cf. Minn. by Ellison v. Am. Petroleum Inst.*, 63 F.4th 703, 714 (8th Cir. 2023) (noting that § 1442—§ 1442a's sister provision—is not "constrained by the well-pleaded complaint rule").

[28] *See Germundson v. Armour-Eckrich Meats, L.L.C.*, 276 F. Supp. 3d 911, 915 (N.D. Iowa 2017).

affidavits, or testimony) in making its jurisdictional determination.[29]  Based on the record evidence presented by the parties, the Court understands a little more about the events underlying this lawsuit than it had gleaned from the Complaint alone.

The alleged rape took place sometime in or before December 2016—at Mrs. Howell's birthday party.[30]  Essentially, the Howells' version of events is that Mrs. Howell was incredibly drunk (too drunk to consent, though not unconscious) and Mr. Skaggs knowingly took advantage of that by having sex with her.[31]  On the other hand, Mr. Skaggs's version of events appears to be that Mrs. Howell was not too drunk to consent and initiated the sexual contact.[32]  It is not clear from the record when Mr. Howell found out about this incident.  What is clear is that Mr. Howell, Mrs. Howell, and Mr. Skaggs did not share this incident with the military or the police (or otherwise discuss it publicly) for a full year.[33]

This changed in December of 2017.  At that time, Mr. Howell "was a Master Sergeant in the Arkansas Air National Guard" and "served as the Communications Maintenance Superintendent."[34]  In addition, as a so-called "dual-status technician," he was a federal civilian employee of the United States Air Force.[35]  And he was also a member of the Air National Guard of the United States, which made Mr. Howell "a part of the Enlisted Reserve Corp" of the Air Force.[36]

---

[29] *See id.*

[30] Ex. 1 (Benjamin Howell Aff.) to Defs.' Resp. to Mot. to Remand (Doc. 19-1) at 1–2; Ex. 1 (Second Benjamin Howell Suppl. Aff.) to Defs.' Second Suppl. Resp. to Mot. to Remand (Doc. 40-1) at 4–5.

[31] Ex. 1 (Second Benjamin Howell Suppl. Aff.) to Defs.' Second Suppl. Resp. to Mot. to Remand (Doc. 40-1) at 4–5.

[32] Compl. (Doc. 2) at 2.

[33] *See* Ex. 1 (Benjamin Howell Aff.) to Defs.' Resp. to Mot. to Remand (Doc. 19-1) at 1–2.

[34] *Id.* at 1.

[35] Ex. 1 (Second Benjamin Howell Suppl. Aff.) to Defs.' Second Suppl. Resp. to Mot. to Remand (Doc. 40-1) at 1.

[36] *See Perpich v. Dept. of Def.*, 496 U.S. 334, 345 (1990).  Although neither party comes right out and says it, the Court knows that Mr. Howell was a member of the United States Air National Guard because, "[s]ince 1933[,] all

Like Mr. Howell, Mr. Skaggs "was also in the Arkansas Air National Guard[;]" he "served as a Technical Sergeant in the Communications Quality Assurance office . . . ."[37]  On December 27, 2017, Mr. Howell was informed by his immediate commander (who also happened to be Mr. Skaggs's immediate commander) that Mr. Skaggs "was being moved to Communications maintenance."[38]   Because Mr. Howell was the appointed Communications Maintenance Superintendent, this move would make Mr. Howell Mr. Skaggs's immediate supervisor, placing Mr. Skaggs in Mr. Howell's chain of command.[39]

In early January of 2018, Mr. Howell reported the alleged 2016 rape of Mrs. Howell to the on-premises Sexual Assault Response Coordinator.[40]  He then told his immediate commander of the report and, at the request of his immediate commander, shared details regarding the alleged rape.[41]  And (at least based on the allegations in the Complaint) the commander "then forwarded the" rape report "to the police department."[42]  From there, it is unclear whether the police contacted the Howells or the Howells took it upon themselves to follow up with the police.  But it appears that at least Mrs. Howell spoke with the police and "initiated charges."[43]

Mr. Howell says that, once he became Mr. Skaggs's supervisor, Air Force rules required Mr. Howell to report what he reasonably believed (and still believes) to have been the rape (or sexual assault) of Mrs. Howell to the Sexual Assault Response Coordinator and to his immediate

---

persons who have enlisted in a State National Guard unit have simultaneously enlisted in the National Guard of the United States." *Id.*

[37] Ex. 1 (Benjamin Howell Aff.) to Defs.' Resp. to Mot. to Remand (Doc. 19-1) at 1.

[38] *Id.*

[39] *Id.*

[40] *Id.* at 2.

[41] Ex. 1 (First Benjamin Howell Suppl. Aff.) to Defs.' First Suppl. Resp. to Mot. to Remand (Doc. 29-1) at 2.

[42] Compl. (Doc. 2) at 2.

[43] *Id.*

commander.[44]  Specifically, Mr. Howell asserts that he was obligated to report the rape because of Air Force Instruction (AFI) 90-6001.[45]

What is AFI 90-6001 and from where did it come?  Pursuant to its statutory obligations,[46] the Department of Defense issued Department of Defense Instruction (DoDI) 6495.02.[47]  The DoDI commanded that "[t]he Secretaries of the Military Departments shall: Establish [Sexual Assault Prevention and Response] policy and procedures . . . ."[48]  In response, the Secretary of the Air Force ordered that AFI 90-6001 be issued.[49]  As that AFI notes, "compliance with [the] publication is mandatory."[50]  This mandatory compliance with AFI 90-6001 applies to "all levels of command and all AF organizations including the Active Duty (Reg[ular Air Force]), [Air Force] government civilian employees, United States Air Force Academy (USAFA), and Air National Guard (ANG) and Air Force Reserve Components (ARC) while in Federal Service."[51]  Further, there exists serious administrative disciplinary actions for non-compliance with the prohibitions and mandatory provisions in AFI 90-6001.[52]

---

[44]  Ex. 1 (Benjamin Howell Aff.) to Defs.' Resp. to Mot. to Remand (Doc. 19-1) at 2.  With respect to relevant Air Force Rules, Plaintiff and Defendants mostly cite to AFI 36-6001 instead of AFI 90-6001.  *Compare* Suppl. Br. in Supp. of Mot. to Remand (Doc. 30) at 1, 3 and Ex. 1 (Second Benjamin Howell Suppl. Aff.) to Defs.' Second Suppl. Resp. to Mot. to Remand (Doc. 40-1) at 2, 5–6, *with* Defs.' Mot. to Strike Pl.'s Compl. (Doc 16) at 3.  The Court does not understand why either side cites AFI 36-6001, as that AFI was superseded by AFI 90-6001 in 2016—before Mr. Howell made the allegation central to this case.  The 2016 update made two changes.  The update (1) redesignated § 2.12.1 in AFI 36-6001 to § 3.7.3 in AFI 90-6001, and (2) included the Sexual Assault Response Coordinator and the reporter's commander in the mandatory reporting scheme described in these sections.  Regardless, because AFI 90-6001 was the operative directive at the time of the allegation, the Court analyzes AFI 90-6001 as opposed to AFI 36-6001.

[45]  Defs.' Mot. to Strike Pl.'s Compl. (Doc 16) at 3; Ex. 1 (Benjamin Howell Aff.) to Defs.' Resp. to Mot. to Remand (Doc. 19-1) at 2.  *See also supra* note 44.

[46]  National Defense Authorization Act for Fiscal Year 2013, Pub. L. No. 112-239, § 579, 126 Stat. 1632, 1763–64.

[47]  D.o.D. Instruction 6495.02.

[48]  *Id.* at 23.

[49]  AFI 90-6001 at 1.

[50]  AFI 90-6001 at 1.

[51]  *Id.*

[52]  *Id.* at 1-2.

AFI 90-6001 requires:

> [a]ny military member or civilian employee . . . who receives a report of an adult sexual assault incident involving a subordinate in the individual's supervisory chain [to] report the matter to the [Sexual Assault Response Coordinator], Commander (or equivalent) and [Air Force Office of Special Investigations] . . . . Failure to comply may result in administrative action or action under the [Uniform Code of Military Justice].[53]

Mr. Howell says that he felt "forced to report" because of this rule.[54]  He asserts that, "Air Force Instructions . . . are lawful orders from superior [federal] officers[,]" and failure to comply with such orders "may result in administrative action or action under the UCMJ."[55]  It is under this cloak of federal regulation that Mr. Howell claims he was compelled to report a sexual assault involving a subordinate in his supervisory chain.[56]

## II.      JURISDICTIONAL DISCUSSION

The first requirement for 28 U.S.C. § 1442a to apply is that the removed action must be a civil or criminal prosecution in a court of a State of the United States against a member of the armed forces of the United States.[57]  Neither the parties nor the Court doubt that (1) the action at bar was—before removal—a civil prosecution in a state court, and (2) the action at bar includes claims against Mr. Howell.  But is Mr. Howell a "member of the armed forces of the United States" as that phrase is used in § 1442a?[58]

Yes, he is.  In the Court's view, the appropriate definition of the term "armed forces of the United States" in 28 U.S.C. § 1442a can be gleaned from several definitions in Title 10 of the

---

[53] *Id.* at 49.

[54] Ex. 1 (Benjamin Howell Aff.) to Defs.' Resp. to Mot. to Remand (Doc. 19-1) at 2.

[55] *Id.* (quoting AFI 90-6001 at 49 (quotation marks omitted)).

[56] *Id.*

[57] *See* 28 U.S.C. § 1442a.

[58] *Id.*

United States Code.  First, in 10 U.S.C. § 101(a)(4), we learn that "[t]he term 'armed forces' means the Army, Navy, Air Force, Marine Corps, Space Force, and Coast Guard."  Second, in 10 U.S.C. § 9062(d), we learn that "[t]he Air Force consists of the Regular Air Force, the Air National Guard of the United States, the Air National Guard while in service of the United States, and the Air Force Reserve[.]"  And third, in 10 U.S.C. § 101(c)(5), we learn that "[t]he term 'Air National Guard of the United States' means the reserve component of the Air Force all of whose members are members of the Air National Guard."

"All persons who have enlisted in a State National Guard Unit have simultaneously enlisted in the National Guard of the United States[,]" which makes them at the very least "a part of the Enlisted Reserve Corp" of the Air Force.[59]  There is no reason to think Mr. Howell is an exception to this rule.  Because Mr. Howell was an enlisted member of the Air National Guard of the United States, he was also a member of the Air Force, which makes him a member of the armed forces of the United States.  Given this fairly easy logical chain, the Court need not address what it sees as tougher questions:  (1) whether, absent separate enlistment in the Air National Guard of the United States, Mr. Howell's enlistment in the Arkansas Air National Guard would make him a member of the armed forces of the United States;[60] and (2) whether, absent separate enlistment in the Air National Guard of the United States, Mr. Howell's dual-status role as a technician (and thus a civilian employee of the Air Force) would make him a member of the armed forces of the United States.[61]

---

[59] *Perpich*, 496 U.S. at 345.

[60] This question was addressed by the D.C. Circuit in a 2009 case, which answered the question affirmatively.  *See generally In re Sealed Case*, 551 F.3d 1047 (D.C. Cir. 2009).  The Court is not convinced the D.C. Circuit got it right.  But, to be fair, neither is the Court convinced of the opposite.  Thankfully, the Court need not make a call one way or the other.

[61] See Br. for the State of Ark. as Amicus Curiae (Doc. 43) at 4–5 (explaining why a civilian employee of the Air Force might not qualify as a "member of" the Air Force as the term "member" is used in § 1442a).

Because Mr. Howell has shown that he is a "member of the armed forces of the United States[,]" we move on to the next part of the § 1442a analysis.  The remainder of the statute is written in the disjunctive.  That is, Mr. Howell must satisfy only one of the two remaining requirements.  He could show that the civil action was being prosecuted against him "on account of an act done under color of his office or status . . . ."[62]  Or he could show that the civil action was being prosecuted against him "on account of an act done . . . in respect to which he claims any right, title, or authority under a law of the United States respecting the armed forces thereof . . . ."[63]  Although he did not need to do so, Mr. Howell has attempted to show that he meets both requirements.[64]  As explained below, the Court is convinced that Mr. Howell meets the latter requirement.  Accordingly, the Court need not and does not address the former one.[65]

At least one of Mr. Skaggs's abuse-of-process claims against Mr. Howell and one of Mr. Skaggs's false-light-invasion-of-privacy claims against Mr. Howell are based on Mr. Howell's report of the alleged rape to the Sexual Assault Response Coordinator and to his immediate commander.[66]  But, according to Mr. Howell, that act—meaning the report of the alleged rape—was required by Air Force regulations.[67]  Because Mr. Howell claims he was obligated to report the alleged sexual assault under Air Force regulations, he also necessarily claims the right, entitlement, or authority to do it under federal law.  Accordingly, the act is one "in respect to which

---

[62] 28 U.S.C. § 1442a.

[63] *Id.*

[64] *See* Defs.' First Suppl. Resp. to Mot. to Remand (Doc. 29) at 3–4.

[65] Addressing whether Mr. Howell was acting under "color of his office or status" in the Air National Guard of the United States versus acting under "color of his office or status" in the Arkansas Air National Guard would require a complicated analysis that risks running into or creating numerous land mines.  Especially in such circumstances, the more appropriate course is to leave that issue for a day when its resolution is necessary to the outcome of a motion.  *See Prieser v. Newkirk*, 422 U.S. 395, 401 (1975).

[66] *See* Compl. (Doc. 2) at 3–4.

[67] *See* Ex. 1 (Benjamin Howell Aff.) to Defs.' Resp. to Mot. to Remand (Doc. 19-1) at 2.

[Mr. Howell] claims [the] right, title, or authority under a law of the United States respecting the armed forces thereof . . . ."[68]

The Court has already described above AFI 90-6001 as well as the statutory and regulatory scheme from which the AFI flows.  In the Court's view, the mandatory reporting requirement in AFI 90-6001 qualifies as having "the force and effect of law."[69]  AFI 90-6001 is about (i.e., "respecting") the armed forces (in this case, the Air Force).  And Mr. Howell has a good faith, non-frivolous, colorable argument that the AFI required the report he made.[70]  (Indeed, whether the argument ultimately prevails on the merits, Mr. Howell's argument strikes the Court at this stage as both plausible and reasonable.)  So far, so good for Mr. Howell's chances to remain in federal court.

There's really only one potential hiccup.  AFI 90-6001 says it applies to "all levels of command and all [Air Force] organizations including the Active Duty (Reg[ular Air Force]), [Air Force] government civilian employees, United States Air Force Academy (USAFA), and Air National Guard (ANG) and Air Force Reserve Components (ARC) while in Federal Service."[71]  Although technically a member of the Air National Guard of the United States, Mr. Howell's day-to-day military service was as an Arkansas Air National Guardsmen and his day-to-day civilian service was as an Air Force employee.[72]  To borrow an analogy from the United States Supreme

---

[68] 28 U.S.C. § 1442a.

[69] *Cf. Chrysler Corp. v. Brown*, 441 U.S. 281, 295 (1979) (quotation marks and citation omitted).

[70] *Cf. Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006) (holding that federal courts have federal question jurisdiction when the plaintiff "pleads a colorable claim 'arising under' the Constitution or laws of the United States"); *see also Nash v. Little Rock Hous. Auth.*, No. 4:20-CV-1320-LPR, 2021 WL 4267570, at *4 (E.D. Ark. Sept. 20, 2021) (defining "colorable" as "an alleged cause of action that is reasonable, but speculative" (quoting *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 810 n.10 (8th Cir. 2003) (quotation marks omitted)).

[71] AFI 90-6001 at 1.

[72] *See* Ex. 1 (Second Benjamin Howell Suppl. Aff.) to Defs.' Second Suppl. Resp. to Mot. to Remand (Doc. 40-1) at 1.

Court in *Perpich*, that means that Mr. Howell had three hats—(1) his federal military guardsman hat, (2) his state military guardsmen hat, and (3) his federal civilian employee hat—but nearly always left the federal military guardsmen hat at home when he went to work.[73]  The hats he almost universally had on at work were only his Arkansas Air National Guard hat and his Air Force civilian employee hat.

Why is this important?  AFI 90-6001 does not of its own force reach the Arkansas Air National Guard because the Arkansas Air National Guard is an Air Force Reserve Component and had not been (at that time) called into federal service.[74]  Mr. Howell was Mr. Skaggs's supervisor in the Arkansas Air National Guard.[75]  So, one could reasonably ask whether AFI 90-6001 really applied to Mr. Howell's report of rape.[76]  The Court believes, however, that Mr. Howell has, at the very least, a colorable argument that it did.  That's because Mr. Howell also had his Air Force civilian employee hat on at work.[77]  And Mr. Howell was also Mr. Skaggs's supervisor with respect

---

[73] *See* 496 U.S. at 348.

[74] *See* AFI 90-6001 at 1.

[75] *See* Ex. 1 (Benjamin Howell Aff.) to Defs.' Resp. to Mot. to Remand (Doc. 19-1) at 1–2.

[76] Mr. Skaggs suggests that Mr. Howell was not obligated to report the alleged rape because (1) nothing obligates Mr. Howell to falsely report a sexual assault, *see* Mot. to Remand (Doc. 18) at 2–3, and (2) Mrs. Howell "was not a victim, as defined by AFI [90]-6001[,]" *see* Suppl. Br. in Supp. of Mot. to Remand (Doc. 30) at 3.  (Mr. Skaggs cites 36-6001 instead of 90-6001.  The definition of "victim" is, in all relevant respects, the same in both.)  But those are just evidentiary arguments about whether the sexual interaction was consensual sex or nonconsensual rape.  That's not a stumbling block to jurisdiction.

Mr. Skaggs also makes some arguments concerning the scope of Department of Defense Directive 6495.01, DoDI 6495.02, and AFI 90-6001, ultimately asserting those rules don't apply to Mr. Howell.  *See* Suppl. Br. in Supp. of Mot. to Remand (Doc. 30) at 3.  The short answer to all those arguments is that AFI 90-6001 requires "*any* . . . civilian employee . . . who receives a report of an adult sexual assault incident involving a subordinate[,]" to report it up the chain.  AFI 90-6001 at 49.  As established earlier, Mr. Howell was a civilian employee of the Air Force at the time he made the rape report.  *See supra* note 35.  And contrary to what Mr. Skaggs claims, no Department of Defense or Air Force document suggests that Mr. Howell could only report if the alleged incident occurred while Mr. Skaggs was Mr. Howell's subordinate.  *See* Suppl. Br. in Supp. of Mot. to Remand (Doc. 30) at 2–3.  Mr. Howell's claim of right or authority is at the very least colorable.

[77] *See* Ex. 1 (Second Benjamin Howell Suppl. Aff.) to Defs.' Second Suppl. Resp. to Mot. to Remand (Doc. 40-1) at 1–2.

to that hat.[78]   AFI 90-6001 expressly applies to Air Force civilian employees.[79]   Accordingly Mr. Howell has a colorable argument that (1) he was, at the time of the rape report, a "member of the armed forces" and (2) his act was one "in respect to which [Mr. Howell] claims [the] right, title, or authority under a law of the United States respecting the armed forces thereof."[80]

## CONCLUSION

Because Mr. Howell has a colorable (not to mention plausible and reasonable) argument that he is a member of the armed forces of the United States and that AFI 90-6001 gave him the right, title, or authority, to report the alleged rape, removal was appropriate under § 1442a.[81]   The Motion for Remand is DENIED in its entirety.   As noted at Doc. 27, the stays currently in place with respect to other motions in this case are lifted effective 14 days from the date of this Order. The Court will soon hold a hearing to resolve those motions and any other motions that are pending

---

[78] *See id.*; Ex. 1 (Benjamin Howell Aff.) to Defs.' Resp. to Mot. to Remand (Doc. 19-1) at 1–2.

[79] *See* AFI 90-6001 at 1, 49.   As relevant to this Order, § 1442a requires that (1) the person sued be a member of the armed forces and (2) the act giving rise to the lawsuit be one in which the person sued claims a right, title, or authority under a federal law respecting the armed forces.   28 U.S.C. § 1442a.   Textually, § 1442a does not require a direct link between the person's status as a member of the armed forces and his claim of right, title, or authority under a federal law respecting the armed forces.   Usually, such a link will exist as a practical matter.   But it is not necessary under the language of the statute.

Above, the Court noted that the question of whether a civilian Air Force employee is "a member of the armed forces" is hard.   But that is only because it is unclear whether the word "member" means military personnel as opposed to civilian employees.   *See* Br. for the State of Ark. as Amicus Curiae (Doc. 43) at 4–5.   The term "armed forces" clearly encompasses both civilian and military personnel of, for example, the Air Force.   The point is this: AFI 90-6001 qualifies as a law "respecting the armed forces" even when it is being applied to civilian personnel of the Air Force.

[80] 28 U.S.C. § 1442a.

[81] *See id.*   The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over all claims against Mrs. Howell and the claims against Mr. Howell related to the Defendants' failure to pay Mr. Skaggs for his work.   Those claims form part of the same case or controversy as the claims for which this Court has subject-matter jurisdiction because they "derive from a common nucleus of operative fact" and "are such that a plaintiff would ordinarily be expected to try them all in one judicial proceeding."   *Kan. Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 77 F.3d 1063, 1067 (8th Cir. 1996) (quotation marks, alterations, and citations omitted); *see also City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164–65 (1997).   The Court was concerned that it might not have supplemental jurisdiction over the claims related to the Defendants' failure to pay Mr. Skaggs, but the parties have persuaded the Court otherwise.   *See* Aug.10, 2023 Hr'g Tr. (Rough) at 10:21–10:23, 10:49–10:55.

and have been fully briefed at the time of the hearing.[82]   Finally, the Court acknowledges, but DENIES, Mr. Skaggs's request to transfer the disputed funds from state court to federal court. Pursuant to 28 U.S.C. § 1450, the monies may remain in state court until the end of the case, even though they are now subject exclusively to the jurisdiction and authority of this federal court.[83]

IT IS SO ORDERED this 2nd day of July 2024.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[82] The Court wishes to note that it does not appear to have a Statement of Undisputed Facts to support Mr. Skaggs's Partial Summary Judgment Motion.  Mot. for Partial Summ. J. (Doc. 13).  The Court's inclination is to deny the Motion without prejudice to a new Summary Judgment Motion that is supported by a Statement of Undisputed Facts. *See* Local Rule 56.1(a).  If Mr. Skaggs disagrees with this outcome, he should be ready to explain why at the hearing, along with otherwise arguing his Motion.

[83] *See Granny Goods Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 436 (1974) ("[A]ttachments, sequestrations, bonds, undertakings, securities, injunctions, and other orders obtained in state court all remain effective after the case is removed to federal court."); *see also Rorick v. Devon Syndicate*, 307 U.S. 299, 309 (1939) ("Those liens, having been obtained in the state court prior to removal, are preserved intact after removal.").